**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WYNETTE KWOK, on behalf of herself and all others similarly situated, | ) | |
| Plaintiff, | ) | Case No. 1:13 C 2070 |
| v. | ) | Hon. Milton I. Shadur |
| DELTA AIR LINES, INC., | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT DELTA AIR LINES, INC.'S**
**MOTION TO DISMISS AND MOTION TO TRANSFER VENUE**

Dated: April 22, 2013

Mark Filip
Gabor Balassa, P.C.
Martin L. Roth
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

RELEVANT ALLEGATIONS ........ 2
- A. Delta's SkyMiles Program. ........ 2
- B. Plaintiff's Allegations. ........ 3
- C. Plaintiff's Travel on Delta. ........ 3

LEGAL STANDARD ........ 4

ARGUMENT ........ 4

I. PLAINTIFF FAILS TO PLEAD A BREACH OF CONTRACT. ........ 4
- A. Plaintiff Seeks To Enforce A Provision Not Contained In Delta's SkyMiles Rules. ........ 5
- B. Delta Awards SkyMiles Based Upon The Plain Meaning Of Its Contract. ........ 9

II. PLAINTIFF'S RESORT TO EXTRINSIC EVIDENCE CANNOT SALVAGE HER CLAIM. ........ 9
- A. Well-Settled Contract Law Precludes Plaintiff's Use Of Extrinsic Evidence. ........ 10
- B. Plaintiff's Extrinsic Evidence Does Not Help Her Cause. ........ 11

III. IF THIS CASE IS NOT DISMISSED, THIS COURT SHOULD TRANSFER THE ACTION TO THE NORTHERN DISTRICT OF GEORGIA. ........ 12

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

## Cases

*188 LLC v. Trinity Indus., Inc.*,
300 F.3d 730 (7th Cir. 2002) .......... 2

*American Home Assurance Co. v. Smith*,
462 S.E.2d 441 (Ga. App. 1995) .......... 8

*Amorose v. C.H. Robinson Worldwide, Inc.*,
521 F. Supp. 2d 731 (N.D. Ill. 2007) .......... 13

*Atlantic Mut. Ins. Co. v. Metron Eng'g & Constr. Co.*,
83 F.3d 897 (7th Cir. 1996) .......... 10

*Banks v. Brotherhood Mut. Ins. Co.*,
686 S.E.2d 872 (Ga. App. 2009) .......... 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Bissessur v. Indiana Univ. Bd. of Trustees.*,
581 F.3d 599 (7th Cir. 2009) .......... 4

*Bjoraker v. Dakota, Minn. & E. R.R. Corp.*,
No. 12 C 7513, 2013 WL 951155 (N.D. Ill. Mar. 12, 2013) .......... 13

*Bowman v. Walnut Mountain Prop. Owners Ass'n, Inc.*,
553 S.E.2d 389 (Ga. App. 2001) .......... 10

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
474 F.3d 463 (7th Cir. 2007) .......... 2

*Claussen v. Aetna Cas. & Sur. Co.*,
380 S.E.2d 686 (Ga. 1989) .......... 10

*Gerow v. Rohm & Haas Co.*,
308 F.3d 721 (7th Cir. 2002) .......... 8

*Glenn v. Maddux*,
253 S.E.2d 835 (Ga. App. 1979) .......... 8

*Harris v. Baker*,
652 S.E.2d 867 (Ga. App. 2007) .......... 10

*Insurance Co. of Pa. v. APAC-S.E., Inc.*,
677 S.E.2d 734 (Ga. App. 2009) ........ 8

*Jaramillo v. DineEquity, Inc.*,
664 F. Supp. 2d 908 (N.D. Ill. 2009) ........ 12

*Kerr-McGee Corp. v. Ga. Cas. & Sur. Co.*,
568 S.E.2d 484 (Ga. App. 2002) ........ 6

*Perett v. Dollard*,
338 S.E.2d 56 (Ga. App. 1985) ........ 10, 11

*Pugh v. Tribune Co.*,
521 F.3d 686 (7th Cir. 2008) ........ 5

*Record Town, Inc. v. Sugarloaf Mills Ltd. P'Ship of Ga.*,
687 S.E.2d 640 (Ga. App. 2009) ........ 6

*Reger Dev., LLC v. Nat'l City Bank*,
592 F.3d 759 (7th Cir. 2010) ........ 4

*Rosenblum v. Travelbyus.com Ltd.*,
299 F.3d 657 (7th Cir. 2002) ........ 10

*Second Refuge Church of Our Lord Jesus Christ, Inc. v. Lollar*,
653 S.E.2d 462 (Ga. 2007) ........ 10

*Smart v. Local 702 Int'l Bhd. of Elec. Workers*,
562 F.3d 798 (7th Cir. 2009) ........ 9

*SwingAway Sports Prods. v. Escalade, Inc.*,
No. 11 C 7949, 2012 WL 1431277 (N.D. Ill. Apr. 23, 2012) ........ 12, 13

*Timm, Inc. v. Bank One Corp., N.A.*,
No. 04 C 3541, 2005 WL 2347231 (N.D. Ill. Sept. 22, 2005) ........ 9

*Unified Gov't of Athens-Clarke County v. McCrary*,
635 S.E.2d 150 (Ga. 2006) ........ 5

*Union Commerce Leasing Corp. v. Beef 'N Burgundy, Inc.*,
270 S.E.2d 696 (Ga. App. 1980) ........ 8

**Statutes**

28 U.S.C. § 1391 ........ 12

28 U.S.C. § 1404(a) ........ 1, 12, 14

Ga. Code Ann. § 13-2-2 ........ 5, 8

**Other Authorities**

Administrative Office of the U.S. Courts,
*United States District Courts—National Judicial Caseload Profile* ........................................ 14

Regina Edwards, *How to Calculate Frequent Flier Miles*,
USA Today........................................................................................................................ 11

*The American Heritage Dictionary of the English Language*
(5th ed. 2011) ........................................................................................................................ 6

*The Random House Dictionary of the English Language*
(2d ed. 1987) ........................................................................................................................ 6

*Webster's Third New International Dictionary of the English Language Unabridged* (2002)........................................................................................................ 6

**Rules**

Fed. R. Civ. P. 10(c) ........................................................................................................... 2

Fed. R. Civ. P. 12(b)(6)................................................................................................. 5, 14

This putative class-action lawsuit purports to allege a breach of contract against Delta Air Lines, Inc. ("Delta"). But Plaintiff's suit fails to identify any contractual violation by Delta. The Complaint's quotations from Delta's "SkyMiles® Program Rules and Conditions" ("SkyMiles Rules") establish that, contrary to Plaintiff's assertion, Delta did ***not*** agree to calculate frequent-flier miles based on "actual miles flown." To the contrary, the SkyMiles Rules provide for mileage awards according to each flight's "distance from origin to destination." And Plaintiff concedes that Delta awarded SkyMiles mileage credit to Plaintiff and its other program members by applying that measure.

In the Complaint, Plaintiff attempts to expand the scope of the SkyMiles Rules by referring to a *USA Today* article and a discussion on Delta's website of "Medallion" status. Neither source of extrinsic evidence, however, is incorporated into the contract at issue here. Nor are the terms of the contract ambiguous such that considering extrinsic evidence would be appropriate; such materials are irrelevant as a matter of law. And, in any event, neither source supports Plaintiff's interpretation of the relevant contract term. Plaintiff's attempt to rewrite Delta's SkyMiles Rules to say something contrary to the contract's plain language should be rejected.

There is no question that this Court is fully capable of deciding the straightforward contract issue that this motion presents as a matter of law. However, if for any reason Delta's motion to dismiss were denied and this case were to proceed with discovery, then Delta respectfully submits, at that juncture, a transfer to the Northern District of Georgia would be appropriate under 28 U.S.C. § 1404(a). To the extent any extrinsic evidence is relevant, or other evidence is needed, the bulk of such witnesses and materials are in Atlanta. None, apparently, is located in Chicago.

## RELEVANT ALLEGATIONS[1]

### A. Delta's SkyMiles Program.

Delta offers customers the option of enrolling in a frequent-flier loyalty program called SkyMiles. To enroll, customers must provide their contact information and agree to Delta's "SkyMiles Program Rules and Conditions" ("SkyMiles Rules" (attached as Ex. A hereto)).[2] (Compl. ¶¶ 2, 18) When a SkyMiles member purchases eligible Delta fares and travels on the purchased route, Delta awards the member "miles" that it deposits in the member's SkyMiles account. (Ex. A at 3–4, 12; Compl. ¶ 1)[3]

Plaintiff concedes that the SkyMiles Rules expressly state how credited miles are calculated:

- "On nonstop and direct flights, mileage credited will be calculated based upon the distance from origin to final destination, regardless of the number of stops"; and
- "On connecting flights that require a change of plane and flight number, mileage credited will be calculated based upon the distance from origin to destination for each segment of the trip."

(Ex. A at 12; Compl. ¶ 2)

---

[1] For purposes of this motion to dismiss, Plaintiff's allegations must be accepted as true. By reciting allegations from the Complaint, Delta does not concede their accuracy.

[2] Exhibit A is the version of Delta's SkyMiles Rules that Plaintiff quotes in her complaint. (Compl. ¶¶ 2, 19) This version is quoted in certain instances on Delta's website, although Delta revised this version in October 2006. (Exhibit B is the revised version of the SkyMiles Rules, available in full on Delta's website at http://www.delta.com/content/dam/delta-www/pdfs/skymiles/SM_MemGuide.pdf (accessed Apr. 14, 2013). Because the minor difference between the two versions is immaterial to this motion, Delta will address the version containing the text that is quoted in the complaint (Exhibit A). The result, however, is the same under either version.

[3] Documents referenced in the complaint are considered part of the pleading on a motion to dismiss. *See* Fed. R. Civ. P. 10(c); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim."). To the extent that contracts referenced in the complaint contradict the complaint, "the contracts trump the facts or allegations presented in the Complaint." *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007).

Members may redeem miles for, among other benefits, free air travel, seating upgrades, and airport lounge access. (Ex. A at 7–8, 11; Compl. ¶ 11) Members who accumulate sufficient miles can also attain various levels of "Medallion" status; Medallion members receive additional benefits, including bonus award miles and priority services. (Ex. A at 6; Compl. ¶ 16) Among other benefits, "Diamond Medallion" status members receive a 125% mileage bonus, plus complimentary upgrades and early boarding opportunities. (Ex. A. at 6; Compl. ¶ 25) The program benefits and eligibility requirements for Diamond Medallion status are contained in a separate guide from Delta's SkyMiles Rules. (Ex. A at 6)

**B. Plaintiff's Allegations.**

Plaintiff alleges that the SkyMiles Rules constitute a contract between Delta and each SkyMiles member. (Compl. ¶ 2) She claims that the contract entitles her, for each Delta flight segment she purchases and travels, to a quantity of "miles corresponding to the distance actually flown on the Delta flight." (*Id.* ¶ 21) Plaintiff states that Delta awards miles based on "direct distance (*i.e.*, a straight line point-to-point irrespective of flight route)," and claims that, in doing so, Delta fails to comply with its obligation under the SkyMiles Rules to credit mileage according to actual miles flown. (*Id.* ¶¶ 5, 35) But Plaintiff cites no provision of the SkyMiles Rules that references awarding mileage based on "distance actually flown." Instead, she contends that there is no contrary provision in the SkyMiles Program Rules: "Nowhere in the SkyMiles Program Rules does Delta state that the mileage or miles credited are not actual miles flown by the member." (*Id.* ¶ 19)

**C. Plaintiff's Travel on Delta.**

Plaintiff alleges that she is a member of Delta's SkyMiles program, in which she has achieved Diamond Medallion status. (Compl. ¶ 21) She alleges that, among other flights, she was a passenger on Delta Flight No. 2262 on March 3, 2013 and Delta Flight No. 126 on March

10, 2013, both from Los Angeles International Airport to John F. Kennedy International Airport. (*Id.* ¶¶ 23, 26) Excluding Diamond Medallion bonus miles, Plaintiff was credited 2,475 miles for each flight. She alleges that the "actual flown distance" for the two flights was 2,651 and 2,802 miles, respectively. (*Id.* ¶¶ 23–24, 26–27)

Plaintiff seeks to bring this breach-of-contract action on her own behalf and as purported representative of a class consisting of all SkyMiles members, whom she alleges have likewise been denied credit for "actual miles flown" as purportedly required by the SkyMiles Rules. (*Id.* ¶¶ 36, 47–50)

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain 'enough facts to state a claim to relief that is plausible on its face' and also must state sufficient facts to raise a plaintiff's right to relief above the speculative level." *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim advancing a legally flawed theory is properly dismissed under Rule 12(b)(6). *See, e.g.*, *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764–66 (7th Cir. 2010).

## ARGUMENT

### I. PLAINTIFF FAILS TO PLEAD A BREACH OF CONTRACT.

Plaintiff's claim depends entirely on the flawed premise that Delta agreed to award frequent-flier miles for the miles the airplane actually traversed. (Compl. ¶¶ 4, 23–24, 26–27) Plaintiff thus appears to seek credit for the miles her flights may have covered, for example, while ascending and descending from altitude, diverting around inclement weather, making unplanned stops to refuel, circling in a holding pattern, and flying around an airport to approach a particular runway. But Plaintiff has not and cannot point to any language in Delta's SkyMiles

Rules that uses the terms "miles actually flown," "miles actually traveled," "actual miles traversed in flight," or any other indication that mileage will be determined by the precise path the plane follows in transit.

Instead, the language the Complaint quotes from the Delta SkyMiles Rules establishes that Delta agreed to credit miles "based upon the distance from origin to final destination." (*Id.* ¶¶ 2, 19 (quoting Ex. A at 12)) Delta has credited Plaintiff miles pursuant to this provision (*id.* ¶¶ 23–24, 26–27, 30–31), thus the Complaint must be dismissed for failure to state a claim. Fed. R. Civ. P. 12(b)(6); *see, e.g.*, *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008) ("[A] plaintiff can plead himself out of court by alleging facts that show there is no viable claim.").

### A. Plaintiff Seeks To Enforce A Provision Not Contained In Delta's SkyMiles Rules.

It is black-letter law that contractual language must be interpreted according to its common and ordinary meaning. *See* Ga. Code Ann. § 13-2-2(2) (when interpreting contracts, "[w]ords generally bear their usual and common significance"); *Unified Gov't of Athens-Clarke County v. McCrary*, 635 S.E.2d 150, 152 (Ga. 2006) ("terms and phrases contained in a contract must be given their ordinary meaning").[4] That bedrock principle dooms Plaintiff's claim.

Delta's SkyMiles Rules state that frequent-flier miles are based on "the distance from origin to destination." (Compl. ¶¶ 2, 19 (quoting Ex. A at 12)) Specifically, the SkyMiles Rules state: (1) "[o]n nonstop and direct flights, mileage credited will be calculated based upon the distance from origin to final destination, regardless of the number of stops," and (2) "[o]n connecting flights that require a change of plane and flight number, mileage credited will be calculated based upon the distance from origin to destination for each segment of the trip." (*Id.* (quoting Ex. A at 12))

---

[4] Delta's SkyMiles Rules contain an explicit choice-of-law provision adopting Georgia law (Ex. A at 23), and the Complaint concedes that Georgia law applies to this action. (Compl. ¶ 51)

In common parlance, "distance" means "the degree or amount of separation between two points, lines, surfaces, or objects in geometrical space measured along the shortest path joining them." *Webster's Third New International Dictionary of the English Language Unabridged* 658 (2002).[5] Other dictionary definitions of "distance" are consistent and include: "the extent of space between two objects or places," *The American Heritage Dictionary of the English Language* 523 (5th ed. 2011), and "the extent or amount of space between two things, points, lines, etc." *The Random House Dictionary of the English Language* (2d ed. 1987). Thus, "distance" is commonly understood to refer to a static and immutable measurement—not something that varies based on the unique experience of any individual pilot or flight.

After all, in common usage, the question, "What's the distance from New York to Los Angeles?" is presumed to have an objective, fixed answer. It would be odd to answer, "it depends." By contrast, the question, "How many miles will I put on my car if I drive from New York to Los Angeles?" would likely be answered, "it depends," or with a request for more information about the intended route and expected stops or detours. Plaintiff herself implicitly acknowledges the common understanding of the term "distance" when she uses the term in her Complaint: "Delta awarded miles much closer to the direct distance ***(i.e., a straight line point-to-point irrespective of flight route)*** between the origin and the destination instead of actually flown miles for each flight." (Compl. ¶ 5 (emphasis added))

Moreover, there are additional grounds that justify dismissing Plaintiff's claim, separate and independent from dictionary definitions and common usage of the term "distance." Other

---

[5] "In construing a contract to ascertain the intent of the parties, the court should give a term or phrase in the contract its ordinary meaning or common signification as defined by dictionaries, because they supply the plain, ordinary, and popular sense." *Kerr-McGee Corp. v. Ga. Cas. & Sur. Co.*, 568 S.E.2d 484, 459 (Ga. App. 2002); *accord Record Town, Inc. v. Sugarloaf Mills Ltd. P'Ship of Ga.*, 687 S.E.2d 640, 643 (Ga. App. 2009) ("[U]nambiguous terms are taken in their plain, ordinary and popular sense as supplied by dictionaries."); *Banks v. Brotherhood Mut. Ins. Co.*, 686 S.E.2d 872, 875 (Ga. App. 2009) ("The policy does not define the word 'organization.' As such, we employ the commonly accepted meaning of the word, as defined in dictionaries.").

terms in the SkyMiles contract are dispositive of the issue. Notably, Plaintiff's interpretation of "distance from origin to final destination" ignores the balance of the sentence containing that term. The entire sentence states that "[o]n nonstop and direct flights, mileage credited will be calculated based upon the distance from origin to final destination, ***regardless of the number of stops***." (Ex. A at 12 (emphasis added) (quoted in Compl. ¶ 2))[6] The italicized phrase means that if a nonstop or direct flight makes stops for any reason (including to refuel, for maintenance, because of inclement weather, or, on direct flights, as part of the flight route), Delta does ***not*** award mileage based on the plane's actual flight path. Because such stops are expressly excluded from the mileage calculation, the phrase "distance from origin to final destination" could not mean the actual miles flown by the plane, because the actual miles flown would depend on the number and location of any stops. Simply put, the sentence Plaintiff quotes, if read to the end, refutes her argument about how SkyMiles mileage is purportedly to be calculated.

Plaintiff's interpretation conflicts with another provision of the SkyMiles Rules as well. For connecting flights, the Rules explicitly prohibit the "use of connecting itineraries in lieu of nonstop and/or direct flights for the accumulation of additional mileage." (Ex. A at 12) In other words, where nonstop or direct flights are available, a passenger cannot rack up additional miles by flying indirect routes on connecting flights. Because a passenger in this situation receives miles only for a nonstop or direct flight route that ***she did not actually fly***, the SkyMiles she is credited must be fixed, based on the direct distance between the origin and final destination, not the miles that her multiple flights actually traversed. *See Ins. Co. of Pa. v. APAC-S.E., Inc.*, 677

[6] A "nonstop flight" has no planned stops between the point of origin and the destination, but could stop for unplanned reasons. A "direct flight," by contrast, may have planned stops along the way—*e.g.*, a direct flight may stop at an intermediary airport, so that some passengers may exit and others board, before the flight continues to its end destination.

S.E.2d 734, 739 (Ga. App. 2009) ("contract should be construed in a manner that harmonizes, rather than internally undermines, its various provisions"); *Union Commerce Leasing Corp. v. Beef 'N Burgundy, Inc.*, 270 S.E.2d 696, 699 (Ga. App. 1980) (contract constructions that render other terms superfluous should be avoided); *see also* Ga. Code Ann. § 13-2-2(4) ("the whole contract should be looked to in arriving at the construction of any part").[7]

Unable to cite any provisions stating that mileage will be determined by the precise path the plane follows in transit, Plaintiff argues that "[n]owhere in the SkyMiles Program Rules does Delta state that the mileage or miles credited are not actual miles flown by the member." (Compl. ¶ 2) This assertion turns contract law on its head by arguing the presence of a contractual right from the absence of any term disclaiming it, and allowing an absent term to trump the actual language of the contract. *See Glenn v. Maddux*, 253 S.E.2d 835, 837 (Ga. App. 1979) ("Glenn's argument that his total release from the existing loan was a condition of the contract is likewise spurious, for the contract is silent as to any release and is clear and unambiguous in its terms. As such it must be construed to mean what it says."). Here, the SkyMiles program's statement that "mileage credited will be calculated based upon the distance from origin to final destination" forecloses the possibility that miles will be awarded on some other basis, such as "actual miles flown." *Am. Home Assurance Co. v. Smith*, 462 S.E.2d 441, 444 (Ga. App. 1995) ("If the terms of the contract are clear and express, the courts cannot extend or enlarge the contract by implication or construction so as to embrace an object or limitation distinct from that originally contemplated and not included in the express provisions.").

---

7 This Court should also reject Plaintiff's contract interpretation because she does not explain, in terms that make any commercial sense, how Delta is purportedly supposed to calculate the SkyMiles that it awards. *See Gerow v. Rohm & Haas Co.*, 308 F.3d 721, 725 (7th Cir. 2002) ("[I]t is a fundamental principle of contract interpretation that courts read language to make business sense whenever possible."). Plaintiff's only suggestion of how miles allegedly should be calculated is by citing to a non-Delta website (Compl. ¶ 30) that is not incorporated into Delta's contract and itself offers no explanation of how it calculates mileage. Plaintiff never specifies, for example, whether she contends that "actual miles flown" should be calculated in two or three dimensions (*i.e.*, to include distance traveled moving to higher or lower altitude en route).

**B. Delta Awards SkyMiles Based Upon The Plain Meaning Of Its Contract.**

Plaintiff concedes that Delta, in fact, awards frequent-flier miles based on the terms of its contract. Specifically, the Complaint alleges that "[b]ased on flight data from public sources such as http://flightaware.com/, Delta awarded miles much closer to the direct distance (*i.e.*, a straight line point-to-point irrespective of flight route) between the origin and the destination instead of actually flown miles for each flight." (Compl. ¶ 5)

Because Plaintiff has effectively pleaded that Delta awards miles based on distance between origin and destination—*i.e.*, applying the same methodology provided for in the contract—Plaintiff has pleaded herself out of court and the case should be dismissed. *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 810 (7th Cir. 2009) ("Because Mr. Smart has alleged facts in his complaint that necessarily preclude relief, he pleaded himself out of court, and the district court was correct to dismiss his claim."); *Timm, Inc. v. Bank One Corp., N.A.*, No. 04 C 3541, 2005 WL 2347231, at *2 (N.D. Ill. Sept. 22, 2005) ("Although the purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case, a plaintiff can plead himself out of court by pleading facts that undermine the allegations set forth in the complaint." (internal citation and quotations omitted)) (attached as Ex. C hereto).

**II. PLAINTIFF'S RESORT TO EXTRINSIC EVIDENCE CANNOT SALVAGE HER CLAIM.**

The only other evidence Plaintiff points to in support of Delta's alleged agreement to award mileage based on actual miles flown is extrinsic evidence in the form of an article in *USA Today* about airline frequent-flier programs (Compl. ¶ 4), and stray language from Delta's website relating to Medallion Qualification Miles ("MQMs") (*id.* ¶¶ 3, 20). Both of these sources should be disregarded, and in any event, neither can trump the plain language of the SkyMiles Rules.

**A. Well-Settled Contract Law Precludes Plaintiff's Use Of Extrinsic Evidence.**

A contract does not incorporate provisions of another document by reference unless the parties' "written intent and purpose" evince an intent to incorporate it. *Bowman v. Walnut Mountain Prop. Owners Ass'n, Inc.*, 553 S.E.2d 389, 393 (Ga. App. 2001); *accord Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 664 (7th Cir. 2002) (holding that contract did not incorporate provisions of another document where it did not "show an intent to incorporate the other document and make it part of the contract itself"); *Atl. Mut. Ins. Co. v. Metron Eng'g & Constr. Co.*, 83 F.3d 897, 901 (7th Cir. 1996) (same). Where a contract does not refer to or attach an external document, courts have no basis to find incorporation. *See, e.g.*, *Harris v. Baker*, 652 S.E.2d 867, 869 (Ga. App. 2007) (holding that, under such circumstances, separate documents "cannot be read in conjunction with each other to create a single written contract"). Here, neither the *USA Today* article nor Delta's Medallion "Program Details" webpage is mentioned or referenced in the SkyMiles Rules and thus neither represents a term in Delta's contract.

Further, resort to extrinsic evidence is only appropriate if the agreement's text "is so ambiguous that its meaning cannot be determined through application of the ordinary rules of textual construction." *Second Refuge Church of Our Lord Jesus Christ, Inc. v. Lollar*, 653 S.E.2d 462, 466 (Ga. 2007); *see also Claussen v. Aetna Cas. & Sur. Co.*, 380 S.E.2d 686, 687 (Ga. 1989) ("Extrinsic evidence to explain ambiguity in a contract becomes admissible only when a contract remains ambiguous after the pertinent rules of construction have been applied."). Accordingly, a party cannot use extrinsic evidence to render ambiguous contractual language that is otherwise clear from the context of the contract itself. *Perett v. Dollard*, 338 S.E.2d 56, 57 (Ga. App. 1985) ("Although parol evidence is admissible to explain ambiguous language in a contract, it is not admissible to create an ambiguity where none exists."). Plaintiff identifies no ambiguity in Delta's contract that would justify consideration of parol evidence. Thus, the Court

should not consider either the *USA Today* article or Delta's website language regarding its Medallion program.

**B. Plaintiff's Extrinsic Evidence Does Not Help Her Cause.**

In any event, neither the *USA Today* article nor Delta's webpage regarding its Medallion program is helpful to Plaintiff's argument. For one thing, the text of the *USA Today* article, authored by a self-described "freelance writer . . . scuba instructor and Usui and Karuna Reiki teacher," discusses frequent-flier programs only generally, not Delta's SkyMiles program in particular. Regina Edwards, *How to Calculate Frequent Flier Miles*, USA Today (attached as Ex. D hereto). For another thing, the article does not purport to state what airlines are contractually obligated to do, but rather, how they award miles in practice. (*Id.*) Here, there is no dispute about how Delta, in practice, awards miles. (Compl. ¶¶ 5, 24, 27)

Plaintiff's citation to Delta's webpage regarding its Medallion Program (Compl. ¶ 3), is likewise irrelevant and unhelpful to Plaintiff. For starters, as Plaintiff concedes, the webpage language relates to qualification for Medallion status—a separate elite-status designation that allows passengers access to priority seating and security clearance, upgrades, and other privileges. Moreover, substantively, the webpage's reference to MQMs earned for "distance traveled" is consistent with, and in no way contradicts, the calculation for mileage awards that appears in the SkyMiles contract. Plainly, in air travel, the "distance from origin to destination" (basis for SkyMiles awards) is one way—indeed, the most commonsense way—of calculating "distance traveled" (Medallion webpage term). Thus, the "distance traveled" term on the webpage in no way contradicts or is otherwise determinative of the plain meaning of the terms in the SkyMiles contract. *See, e.g., Perett*, 338 S.E.2d at 57 (Parol evidence "is not admissible to create an ambiguity where none exists.").

## III. IF THIS CASE IS NOT DISMISSED, THIS COURT SHOULD TRANSFER THE ACTION TO THE NORTHERN DISTRICT OF GEORGIA.

For all the foregoing reasons, Delta urges the Court to dismiss Plaintiff's Complaint for failure to state a claim. But, if the Court declines to do so, it should transfer the action to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a). A district court may transfer a case to another venue if (1) venue is proper in this district; (2) venue and jurisdiction are proper in the transferee district; (3) the transferee district is more convenient for the parties and witnesses; and (4) transfer would serve the interests of justice. *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 913 (N.D. Ill. 2009).

As this Court anticipated in its *sua sponte* Memorandum of March 20, 2013, an "appropriate analysis under Section 1404(a) would call for a transfer to a more appropriate District Court." (Dkt. No. 7, at 1–2) First, venue is proper in the Northern District of Illinois because Delta is a resident of this district for purposes of the federal venue statute. *See* 28 U.S.C. § 1391(b)(1), (c)(2). Second, venue and jurisdiction are proper in the Northern District of Georgia because Delta is headquartered in Atlanta, which is situated in the Northern District of Georgia.

Third, the Northern District of Georgia is more convenient for the parties and witnesses. When assessing convenience for the parties, courts in this district consider five factors: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses." *SwingAway Sports Prods. v. Escalade, Inc.*, No. 11 C 7949, 2012 WL 1431277, at *2 (N.D. Ill. Apr. 23, 2012) (attached as Ex. E hereto). Analysis of these factors makes clear that not only is the Northern District of Georgia a more convenient forum for parties and witnesses, but the Northern District of Illinois is a particularly inconvenient forum. The only factor that arguably

cuts against transfer is Plaintiff's forum choice, but when, as here, "the plaintiff's forum is not its home forum and the chosen forum lacks significant contacts with the cause of action, the plaintiff's choice becomes merely one of several factors and is entitled to little weight." *Id*; *see also Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007). Meanwhile, neither party resides in Illinois, none of the particular flights specified in the Complaint departed from or arrived in any airport in this district, and virtually all witnesses and relevant evidence are located in Georgia. (Smith Decl. ¶¶ 2–4 (attached as Ex. F hereto)) To the extent witnesses and evidence are not in Georgia, there is no reason to believe they are located in the Northern District of Illinois. (*Id.* ¶ 4) In short, the convenience factors weigh heavily in favor of transfer.

Finally, the interests of justice favor transferring the case to the Northern District of Georgia. "In determining which venue best serves the interests of justice, courts consider (1) the familiarity of the courts with the applicable law; (2) the speed at which the case will proceed to trial; and (3) the desirability of resolving controversies in the respective locales."[8] *Bjoraker v. Dakota, Minn. & E. R.R. Corp.*, No. 12 C 7513, 2013 WL 951155, at *6 (N.D. Ill. Mar. 12, 2013) (attached as Ex. H hereto). The first factor clearly supports transfer: Georgia law governs this action, and the Northern District of Georgia has greater familiarity than this Court with Georgia law. And this action would likely proceed at roughly the same pace, if not slightly faster, if transferred to the Northern District of Georgia. For fiscal year 2012, the median time to trial for civil cases filed in the Northern District of Illinois was 31.2 months, versus 29.0 months

[8] As part of the Section 1404(a) "interests of justice" analysis, courts also consider the desirability of keeping related actions together. While similar putative class actions have been filed against other airlines in this district, the only commonality between the suits is the legal theory—there is apparently no overlap among any of these cases in terms of parties, contract language, applicable law, or discovery. This commonality question is being briefed separately before Judge Gottschall on Plaintiff's motion for reassignment and consolidation. *See Han v. United Cont'l Holdings, Inc.*, No. 13 C 2067, Dkt. Nos. 8, 10 (N.D. Ill.) (attached as Ex. G hereto).

in the Northern District of Georgia. Administrative Office of the U.S. Courts, *United States District Courts—National Judicial Caseload Profile*, available at http://www.uscourts.gov/uscourts/Statistics/FederalCourtManagementStatistics/2012/district-fcms-profiles-september-2012.pdf (accessed Apr. 14, 2013) (attached as Ex. I hereto). Finally, because there is apparently no connection between this district and either the parties or the events underlying this action, the Northern District of Georgia is a more desirable locale to adjudicate this controversy. Thus, the interests of justice, like the other Section 1404(a) factors, support transferring this action to the Northern District of Georgia.

## CONCLUSION

For all of the reasons stated above, Delta respectfully submits that Plaintiff's Complaint should be dismissed with prejudice, under Federal Rule of Civil Procedure 12(b)(6). If Delta's motion to dismiss is denied, then Delta respectfully requests that this action be transferred to the Northern District of Georgia under 28 U.S.C. § 1404(a).

Dated: April 22, 2013

Respectfully submitted,

/s/ Gabor Balassa, P.C.

Mark Filip
Gabor Balassa, P.C.
Martin L. Roth
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I, Gabor Balassa, P.C., hereby certify that on April 22, 2013, I caused a copy of the foregoing, MEMORANDUM IN SUPPORT OF DEFENDANT DELTA AIR LINES, INC.'S MOTION TO DISMISS AND MOTION TO TRANSFER VENUE, to be served on all counsel of record via the court's CM/ECF System:

/s/ Gabor Balassa, P.C.

Mark Filip
Gabor Balassa, P.C.
Martin L. Roth
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

*Attorneys for Defendant*